**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KATHRYN L. GRANT,

    Plaintiff,

vs.                                                     CASE NO. 3:07-cv-572-J-12TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**[1]

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations.

---

[1] Any party may file and serve specific, written objections hereto within TEN (10) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Local Rule 6.02(a), United States District Court for the Middle District of Florida.

Accordingly, the instant matter has been decided on the written record. For the reasons set out herein, the undersigned **recommends the Commissioner's decision be REVERSED and REMANDED**.

**I. Procedural History**

Plaintiff Kathryn L. Grant filed an application for disability insurance benefits, Title II benefits on June 28, 2000 (Tr. 80-84). Her application was denied initially on May 18, 2001(Tr. 33) and upon reconsideration on January 15, 2003 (Tr. 34). Plaintiff timely filed a request for hearing and a hearing was held before Administrative Judge John D. Thompson, Jr. (the "ALJ") on November 2, 2004 in Jacksonville, Florida (Tr. 457-512). Subsequently, the ALJ entered an unfavorable decision on October 18, 2005 (Tr. 12-30). The claimant filed a Request for Review of Hearing Decision with the Appeal's Council, which was denied on April 17, 2007 (Tr. 6-8). This appeal followed.

**II. Standard of Review**

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i-v);[2] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the

---

[2]All references made to 20 C.F.R. will be to the 2008 edition unless otherwise specified.

Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by

substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

### III. Background Facts

Plaintiff was forty-one years old on December 31, 2001, the date she was last insured for disability benefits (Tr. 461). Plaintiff completed a high school education with two and one half years of college credit (Tr. 129). Plaintiff also worked as a cashier supervisor and department manager and alleges that she became disabled on September 20, 1997, due to low back, neck, and right knee pain (Tr. 86, 123, 132-34, 140, 150).

Plaintiff was injured in an automobile accident on or about September 1, 1996 (Tr. 199). On September 20, 1996, Plaintiff began treatment with Munther Tabet, M.D. ("Dr. Tabet") for neck pain that radiated down her right arm and weakness and numbness of both upper extremities (Tr. 199). Dr. Tabet's impression was cervical myofascial injury (Tr.

199). A magnetic resonance image ("MRI") taken of Plaintiff's cervical spine on September 23, 1996 showed loss of cervical flexure consistent with myofascial injury (Tr. 201).

On October 8, 1996, Plaintiff presented to Michael J. Lord, M.D. ("Dr. Lord") from Spine and Sportsmedicine Specialists (Tr. 215-16). Dr. Lord's initial physical evaluation revealed cubital tunnel syndrome and rotator cuff syndrome (Tr. 215). On December 13, 1996, Plaintiff again saw Dr. Lord, who reported that a MRI of Plaintiff's knee showed a tear in the medial meniscus and that a MRI of Plaintiff's lumbar spine showed injury to the L5-S1 disc with no neural impingement (Tr. 208). On February 20, 1997, Plaintiff presented to Eric W. Scott, M.D. ("Dr. Scott") of Florida Neurosurgical Associates, P.A. (Tr. 217-20), who found Plaintiff's myelogram/CT scan was essentially normal without evidence of neural compression lesion (Tr. 220). Dr. Scott recommended that Plaintiff engage in physical therapy (*see* Tr. 220).

On April 8, 1997, Plaintiff presented to Roberto Puente-Guzman, M.D. ("Dr. Puente-Guzman") (Tr. 228-35). Dr. Puente-Guzman's diagnosis included "low back pain with right radicular complaints. High suspicion for myofascial pain, but with available medical data am unable to completely rule out possible radiculopathy." (Tr. 233). Dr. Puente-Guzman's plan was for Plaintiff to follow up with her primary care physician and return to his clinic at a later date–at which time, he expected more medical data would be available for his review (Tr. 233). On May 8, 1997, Plaintiff followed up with Dr. Puente-Guzman (Tr. 227). Plaintiff exhibited both verbal and nonverbal pain behavior and refused the range of motion ("ROM") part of her examination (Tr. 227). Dr. Puente-Guzman reported that Plaintiff exhibited tenderness upon palpation in her lumbosacral region (Tr. 227). Dr. Puente-Guzman released Plaintiff to full time sedentary-to-light duty work (Tr. 227).

On May 13, 1997, Plaintiff re-visited Dr. Puente-Guzman to discuss her return to work status of May 8, 1997 (Tr. 226).  Plaintiff stated to Dr. Puente-Guzman that her condition had not changed since her automobile accident of September 1, 1996 and that she had persistent bouts of pain (Tr. 226).  Dr. Puente-Guzman noted that Plaintiff demonstrated emotional outbreaks with tearing and that she stated she was not able to return to work emotionally (Tr. 226).  Dr. Puente-Guzman diagnosed Plaintiff with chronic pain syndrome and anxiety/depression disorder (Tr. 226).  On July 1, 1997, Plaintiff followed up with Dr. Puente-Guzman (Tr. 224).  Dr. Puente-Guzman stated that Plaintiff did not make an appointment with a recommended psychiatrist because she decided she did not want to see a psychiatrist (Tr. 224).  Dr. Puente-Guzman's impression included, *inter alia*, anxiety/depression disorder (Tr. 224).

From February 1998 through October 2000, Dr. Puente-Guzman's impression of Plaintiff's anxiety/depression disorder ranged from "currently much improved and essentially resolved" to "rule out anxiety/depression disorder" (*see* Tr. 435-53).  On November 28, 2000, Dr. Puente-Guzman's diagnosis was, "rule out anxiety/depression disorder"; however, he stated that Plaintiff should continue her regimen of Zoloft (an anti-depressant) per Jean Felert Cadet, M.D. ("Dr. Cadet").  On May 8, 2001, Dr. Puente-Guzman increased Plaintiff's dosage of Zoloft and his plan included a referral to a psychiatrist (Tr. 421).  Plaintiff deferred the recommendation that she see a psychiatrist, stating, "this is not all in my head" (Tr. 421).

Dr. Cadet, who appears to be Plaintiff's primary care physician, treated Plaintiff for complaints of pain from November 2000 through July 2004 (*see* Tr. 361-404).[3] On May 31, 2001, Dr. Cadet noted that Plaintiff was frustrated due to being in pain for so long, and that her depression and anxiety were not improved (Tr. 401). Dr. Cadet discontinued Plaintiff's regimen of Zoloft and prescribed Plaintiff 75 mg of Effexor (an anti-depressant) (Tr. 401). On July 19, 2001, Dr. Cadet doubled Plaintiff's dosage of Effexor to 150 mg (Tr. 398). On August 17, 2001, Dr. Cadet ordered Plaintiff to continue her same medicinal management for "major depression" (*i.e.* 150 mg of Effexor) (Tr. 397). On September 10, 2001 Dr. Cadet noted Plaintiff's depression was "ok" and continued her regimen of 150 mg of Effexor (Tr. 386). Approximately one year later, on October 18, 2002, Dr. Cadet increased Plaintiff's dosage of Effexor to 225 mg (Tr. 382).

On December 3, 2002, Plaintiff presented to Andres Nazario, Jr., Ph.D. ("Dr. Nazario"), at the request of the Social Security Administration ("SSA"), for a General Clinical Evaluation with Mental Status (Tr. 302-05). Dr. Nazario reported that Plaintiff stated she was depressed "sometimes" mostly when she is hurting (Tr. 302-03). Dr. Nazario noted that Plaintiff was taking 225 mg of Effexor (75 mg three times per day) (Tr. 303). Dr. Nazario reported that Plaintiff stated she cries two to three times per week and that she has considered suicide several times (Tr. 303). Dr. Nazario additionally reported that Plaintiff stated she has considered harming her daughter (Tr. 303).

---

[3] Dr. Cadet's clinic is located in Lake City, Florida and Plaintiff resides in Lake City, Florida (*see e.g.* Tr. 89, 361). Furthermore, the record indicates Dr. Cadet treated Plaintiff for almost four years (*see* Tr. 361-404).

7

Dr. Nazario found Plaintiff demonstrated the ability to concentrate during the interview and that her persistence and pace appeared adequate (Tr. 304). Dr. Nazario additionally found Plaintiff did not have suicidal or homicidal ideation "at the present time" (Tr. 304). Dr. Nazario diagnosed Plaintiff with Mood Disorder Due to Medical Condition, Chronic Pain, with Depressive Features (Tr. 304).

After reviewing the medical evidence in the record and the testimony at the hearing, the ALJ found Plaintiff had severe impairments of degenerative joint disease of the lumbar spine, neck pain, right shoulder and right knee pain (Tr. 25, 29). The ALJ found Plaintiff did not have a severe mental impairment prior to her date last insured (December 31, 2001) (Tr. 25). The ALJ also found Plaintiff was not disabled and that she retained the residual functional capacity ("RFC") to perform a significant range of sedentary to light work activities (Tr. 26, 29).

The ALJ specifically found that Plaintiff could sit for four hours and stand/walk for four hours in an eight hour workday, but she must be able to alternate her position from sitting to standing and walking at least every thirty minutes (Tr. 26, 29). The ALJ also found Plaintiff can lift and/or carry twenty pounds occasionally and ten pounds or less more frequently (Tr. 26, 29). The ALJ further found that Plaintiff can occasionally bend, stoop, crouch, crawl and kneel, but never climb (Tr. 26, 29). The ALJ determined that Plaintiff can only work in a temperature controlled work setting and is limited to the performance of simple 1-2 step job tasks (Tr. 26, 29).

The ALJ then found that Plaintiff met her initial burden of proof, and could not return to her past relevant work (Tr. 27, 29). After taking testimony from a vocational expert (the "VE"), the ALJ next determined that Plaintiff was capable of making a vocational adjustment

to perform other jobs that exist in the national and local economy (Tr. 29). Specifically, the ALJ found Plaintiff could work as a blood donor unit assistant, press box custodian, mail clerk, counter clerk (photo finishing), addresser, order clerk (food and beverage), surveillance systems monitor, paramutual ticket checker, and telephone quote clerk. *See* United States Dep't of Labor, *Dictionary of Occupational Titles* §§ 245.367-014; 344.677-010; 209.687-026; 249.366-010; 209.587-010; 209.567-014; 379.367-010; 219.587-010; 237.367-046 (4th Ed. 1991).

Consequently, the ALJ found Plaintiff was not under a disability as defined by the Social Security Act (the "Act").

**IV. Analysis**

Plaintiff argues the ALJ did not properly evaluate her mental impairment alone, or in combination with her physical impairments (Doc. #1 at 1). The undersigned finds Plaintiff's argument persuasive for the following reasons.[4]

The Commissioner has supplemented the five-step sequential evaluation process for evaluating a claimant's eligibility for benefits with additional regulations that deal specifically with mental impairments, otherwise known as the "special technique." 20 C.F.R. § 404.1520a. This "special technique" requires the ALJ to, *inter alia*, evaluate the pertinent signs, symptoms, and laboratory findings contained within the case record in order to determine if a mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). If an impairment is found, the ALJ must analyze whether certain medical findings relevant to the

---

[4] Plaintiff also argued that the ALJ erred by not finding Plaintiff's chronic pain severe at Step 2 of the sequential evaluation process (Doc. #15 at 3). The undersigned is not persuaded by this argument, however, because the ALJ found Plaintiff's back pain, neck pain, and knee pain were severe impairments (Tr. 25).

claimant's ability to work are present or absent. 20 C.F.R. § 404.1520a(b). The examiner must then rate the degree of functional loss resulting from the impairment in certain areas deemed essential for work. 20 C.F.R. § 404.1520a(d). These areas are: daily living; social functioning; concentration, persistence, or pace; and deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3). If the mental impairment is considered "severe", the examiner must then determine if it meets a listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe, but does not reach the level of a listed disorder, then the examiner must conduct a RFC assessment. 20 C.F.R. § 404.1520a(d)(3).

> The Regulations provide as follows:
>
> When we [the SSA] rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. [. . .] After we rate the degree of functional limitation resulting from your impairment(s), we will [then] determine the severity of your mental impairment(s).

20 C.F.R. § 404.1520a(c)(4), (d).

The ALJ's evaluations regarding the degree of functional loss in the four aforementioned areas of function must be incorporated into his or her findings and conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005). "Where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF [Psychological Review Technique Form] and append it to the decision, or incorporate its mode of analysis into his findings and

conclusions. Failure to do so requires remand." *Id.* at 1214.

The undersigned finds Plaintiff presented a colorable claim of mental impairment. To illustrate, the evidence of record indicates Plaintiff was diagnosed with anxiety/depression disorder as early as 1997 (*see* Tr. 224-25). Specifically, on July 1, 1997, one of Plaintiff's treating physicians, Dr. Puente-Guzman, noted his impression was that Plaintiff suffered from, *inter alia*, anxiety/depression disorder (Tr. 224). Although on November 28, 2000, Dr. Puente-Guzman's diagnosis was, "rule out anxiety/depression disorder", he ordered Plaintiff to continue her regimen of Zoloft (an anti-depressant).

Moreover, on May 8, 2001, Dr. Puente-Guzman increased Plaintiff's dosage of Zoloft, and his plan included a referral to a psychiatrist (Tr. 421). On May 31, 2001, one of Plaintiff's treating physicians, Dr. Cadet, noted Plaintiff's depression and anxiety were not improved and he changed Plaintiff's prescription from Zoloft to a different anti-depressant, Effexor (Tr. 401).[5] On July 19, 2001, Dr. Cadet doubled Plaintiff's dosage of Effexor, and on August 17, 2001, Dr. Cadet ordered Plaintiff to continue taking Effexor for "major depression" (Tr. 397-98). The undersigned notes that Plaintiff's aforementioned prescribed treatment for anxiety/depression occurred before Plaintiff's date of last insured, December 31, 2001.

On December 3, 2002, Dr. Nazario noted that Plaintiff was taking 225 mg of Effexor (75 mg three times per day) (Tr. 303). Dr. Nazario additionally noted that Plaintiff stated she cried two to three times per week and that she considered suicide on several occasions (Tr. 303). Dr. Nazario also reported that Plaintiff stated she considered harming her

---

[5]The undersigned notes that the ALJ never even mentioned Dr. Cadet in his decision.

11

daughter (Tr. 303). Dr. Nazario diagnosed Plaintiff with Mood Disorder Due to Medical Condition, Chronic Pain, with Depressive Features (Tr. 303-04).

Additionally, Plaintiff directly raised a psychiatric issue in her Disability Reconsideration Report (*see* Tr. 150-58). Plaintiff wrote in that report that she suffered from "severe depression" and that her depression prevented her from working (Tr. 150-58). When there is evidence of a mental impairment that allegedly prevents a claimant from working, "the Commissioner must follow the procedure for evaluating mental impairments set forth in 20 C.F.R.§ 404.1520a. These procedures are intended to ensure a claimant's mental health impairments are given serious consideration by the Commissioner in determining whether a claimant is disabled." *Plummer v. Apfel*, 186 F.3d 422, 432 (3rd Cir. 1999).

Although Dr. Nazario found Plaintiff demonstrated the ability to concentrate during the interview and that her persistence and pace appeared adequate, the ALJ did not discuss these observations when he determined Plaintiff's mental impairment was not severe (*see* Tr. 25). When evaluating a claimant's mental impairment, the Commissioner is required to follow the procedures set forth in 20 C.F.R. § 404.1520a. Under those procedures, the ALJ must make separate evaluations on a four-point scale regarding how the claimant's mental impairment impacts the aforementioned four functional areas, *supra*. The ALJ's evaluations must be incorporated into his or her findings and conclusions, and failure to do so requires remand. *Moore*, 405 F.3d at 1213-14.

Once the ALJ rates the degree of functional limitation resulting from a plaintiff's mental impairment, he or she must then determine whether the mental impairment is severe in nature. 20 C.F.R. § 404.1520a(d). The "special technique" requires the ALJ to

go through the analytical steps mentioned above. One of the stated purposes for the "special technique" is to help the Social Security Administration "organize and present [its] findings in a clear, concise, and consistent manner." 20 C.F.R. § 404.1520a(3). The specific documentation requirements "are not mere technicalities that can be ignored as long as the ALJ reaches the same result that it would have if it had followed those requirements." *Selassie v. Barnhart*, 203 Fed. Appx. 174, 176 (9th cir. 2006).[6]

Here, the ALJ omitted the "special technique" from his analysis altogether (*see* Tr. 25). Even though the ALJ found Plaintiff had been diagnosed with a mood disorder and depression/anxiety due to a medical condition, his reason for not finding Plaintiff suffered from a severe mental impairment was merely that "the evidence shows that the claimant [Plaintiff] was not receiving any type of treatment from a mental health professional prior to her date last insured [December 31, 2001]" (Tr. 25). This was the extent of the ALJ's analysis in regards to determining the severity of Plaintiff's mental impairment. The ALJ never rated Plaintiff's degree of functioning in the four functional areas of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation. The undersigned finds the ALJ's method of analysis woefully inadequate under the Regulations and the law of this circuit and, therefore, cannot find the Commissioner's decision was based on substantial evidence or decided according to proper legal standards.

---

[6]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

**V. Recommendation**

Review of the record as a whole reveals substantial evidence does not support the ALJ's finding of non-disability. The undersigned finds the decision of the Commissioner is neither supported by substantial evidence, nor decided according to proper legal standards. Accordingly, and for the reasons stated herein, the undersigned **recommends the Commissioner's decision be REVERSED and this case REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner of Social Security for further proceedings consistent with this Report and Recommendation.

Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits. Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

Upon remand, the Commissioner shall re-evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law. The additional proceedings, should include, but are not limited to: assessment of the severity of all of Plaintiff's medically determinable impairments and, in light thereof, re-assessment of Plaintiff's RFC; consideration of the opinions of Plaintiff's examining and treating medical sources; consideration of the opinions of non-examining medical sources; re-evaluation of Plaintiff's subjective complaints of pain; and, if warranted, additional vocational expert testimony. The ALJ shall accord proper weight to the testimony and statements of Plaintiff's treating physicians (including Dr. Cadet's opinion) in accordance with the law of this circuit. *See*

*Lewis v. Callahan,* 125 F.3d 1426, 1440-41 (11th Cir. 1997)*; Sharfarz v. Bowen*, 825 F.2d 278, 279-81 (11th Cir. 1987).  If the ALJ finds reason to disregard the opinion of a treating or examining physician, he must provide specific reasons for doing so, and these reasons must be supported by substantial evidence in the record.

**DONE AND ENTERED** at Jacksonville, Florida this  5th  day of September, 2008.

Copies to all counsel of record

*/s/ Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge